IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CHRISTOPHER CROSBY,                    *

     Plaintiff,                         *

vs.                                    *
                             CASE NO. 4:09-CV-139 (CDL)
J.D. PERRY, Georgia State             *
Trooper Badge # 713, as an
Individual,                            *

     Defendant.                         *

_____

O R D E R

    This action arises from the arrest of Plaintiff, Christopher
Crosby, by Defendant, Georgia State Trooper J.D. Perry. Plaintiff
alleges that Defendant arrested him because he refused to sign two
traffic citations issued to him by Defendant. Plaintiff contends
that during his arrest, Defendant violated his constitutional rights
by using excessive force and being deliberately indifferent to his
serious medical needs. Plaintiff asserts federal law claims against
Defendant in his individual capacity for these alleged constitutional
violations, pursuant to 42 U.S.C. § 1983 ("§ 1983"). Plaintiff also
alleges state law tort claims against Defendant for assault, battery,
and intentional infliction of emotional distress arising from the
arrest. Defendant seeks dismissal of Plaintiff's federal
constitutional claims based on qualified immunity and dismissal of

Plaintiff's state law claims based on official immunity. For the following reasons, Defendant's Motion to Dismiss (Doc. 4) is granted.

## MOTION TO DISMISS STANDARD

In evaluating Defendant's motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

The Court notes that the Eleventh Circuit Court of Appeals "has tightened the application of [Federal Rule of Civil Procedure] 8 in section 1983 cases where qualified immunity is at issue, like this one." *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1233 (11th Cir. 2010). In such cases, a "heightened pleading standard" applies and "[s]ome factual detail in the pleadings is necessary." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998); *see also Danley v. Allen*, 540 F.3d 1298, 1314 (11th Cir. 2008) ("Under the heightened pleading requirement, the relevant facts must be alleged with some specificity." (internal quotation marks omitted)). The purpose of the heightened pleading standard is for the plaintiff to provide facts with "sufficient detail for Defendants to understand what alleged rights were violated . . . and which of their actions allegedly violated those rights," as well as "for the court to determine whether those facts indeed set out a violation of rights and whether those rights were clearly established when these incidents occurred." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009).

## PLAINTIFF'S ALLEGATIONS

On November 18, 2007, Plaintiff made a "hook-type turn" at the intersection of Macon Road and Midtown Drive in Columbus, Georgia. (Compl. ¶ 5.) Defendant, a Georgia State Patrol officer in a marked vehicle, pulled Plaintiff over for making an illegal U-turn. (*Id.* ¶

3

6.) Plaintiff told Defendant that "he did not make a full U-turn, U-turns at that intersection were very common, and there was no sign anywhere forbidding it." (*Id.* ¶ 7.) Despite Plaintiff's explanation, Defendant issued Plaintiff two tickets, one for an illegal U-turn and one for an expired decal. (*Id.* ¶ 8.) When Defendant presented the tickets for Plaintiff's signature, Plaintiff asked whether he was legally required to sign the tickets since he did not agree with them. (*Id.* ¶ 9.) Defendant refused to answer, instead demanding that Plaintiff sign the tickets. (*Id.* ¶ 10.) Plaintiff refused to sign the tickets, and Defendant "forcefully grabbed Plaintiff's arms, yanked them behind his back, and slapped handcuffs on him, arresting him for obstruction of an officer." (*Id.* ¶¶ 11-12.) Plaintiff was not under the influence of drugs or alcohol and did not resist arrest. (*Id.* ¶ 13.)

Defendant then returned to his patrol vehicle, leaving Plaintiff near his vehicle. (*Id.* ¶ 14.) At that time, Officer Borum, a Columbus police officer, called Plaintiff's cellular phone. (*Id.* ¶ 15.) Plaintiff answered the call and told Officer Borum he was being arrested by a Georgia State Patrol officer for not signing traffic tickets. (*Id.* ¶¶ 16-17.) Shortly thereafter, Officer Borum arrived on the scene and spoke with Defendant, indicating to Defendant that Plaintiff's turn was not illegal. (*Id.* ¶ 18.) After "Defendant

4

responded belligerently to Officer Borum[,]" Officer Borum left the scene. (*Id.* ¶¶ 19-20.)

Defendant then moved Plaintiff to his patrol vehicle. (*Id.* ¶ 21.) Before Defendant placed Plaintiff in his patrol vehicle, Plaintiff "indicated that he had medical issues, including occupational asthma and a pre-existing herniated disc and, due to that and due to his size (6' 2"), it would take him a minute to get into the car." (*Id.* ¶ 22.) Despite Plaintiff's admonition, "Defendant walked over [to] the passenger side back door, opened it, reached in, and dr[agged] Plaintiff by the back of his shirt across the back seat." (*Id.* ¶ 23.) As Defendant dragged Plaintiff across the back seat, Plaintiff's handcuffs "clicked tighter and tighter, cutting into Plaintiff's wrists and causing visible injury." (*Id.* ¶ 24.) Plaintiff "screamed for Defendant to stop and loosen the cuffs." (*Id.* ¶ 25.) Defendant "ignored Plaintiff's pleas, continued to drag Plaintiff across the seat, and left Plaintiff lying in the back seat with the handcuffs cutting in to his wrists." (*Id.* ¶ 26.)

After Plaintiff was in the back seat, Officer Borum called Plaintiff a second time. (*Id.* ¶ 27.) Plaintiff again answered his cellular phone and "cried in pain, indicating that the cuffs were cutting into his wrists." (*Id.*) "Moments later, Officer Borum reappeared on the scene and demanded that Defendant loosen and double lock the handcuffs; but, by that time, damage and visible injury had

already been done." (*Id.* ¶ 28.) Defendant loosened and double locked Plaintiff's handcuffs, and Officer Borum again left the scene. (*Id.* ¶¶ 29-30.)

The following exchange then occurred between Plaintiff and Defendant, as recounted in paragraphs thirty-one through thirty-six of Plaintiff's Complaint:

> 31. Shortly thereafter, Plaintiff then began to cough uncontrollably and screamed for his inhaler, which was in his vehicle.
>
> 32. Defendant ignored Plaintiff's pleas and, instead, began the process of having Plaintiff's vehicle removed from the scene.
>
> 33. At that time, and as a direct and proximate cause of Defendant's deliberate indifference to Plaintiff's medical needs, the coughing fit became uncontrollably violent, causing injury to his L6-L7 vertebrae.
>
> 34. Only at that time did Defendant decide to call EMS.
>
> 35. Soon therefter, EMS showed up at the scene.
>
> 36. Defendant told EMS that Plaintiff was faking the whole thing and was doing anything he could to get out of going to jail.

(*Id.* ¶¶ 31-36.)

Defendant then took Plaintiff to jail. (*Id.* ¶ 37.) All charges against Plaintiff were subsequently dropped. (*Id.* ¶ 38.)

## I.  Plaintiff's § 1983 Claims

Plaintiff alleges that Defendant used excessive force and was deliberately indifferent to his serious medical needs during his arrest, thereby violating his Fourth and Fourteenth Amendment rights. Qualified immunity, however, "'offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'"[1]  *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009) (quoting *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009)).

"To evaluate claims of qualified immunity, the Court considers whether (1) the plaintiff has alleged a violation of a constitutional

---

[1]"To invoke qualified immunity, the official first must establish that he was acting within the scope of his discretionary authority" when the alleged violation occurred. *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009).  To determine whether an official was engaged in a discretionary function, the Court considers whether the acts the official undertook "are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  Here, the answer is clear.  Plaintiff's Complaint arises exclusively from Defendant's arrest of Plaintiff.  Because making an arrest is within the official responsibilities of a Georgia State Patrol officer, Defendant was performing a discretionary function during Plaintiff's arrest.  *See* O.C.G.A. §§ 35-2-32(b), 35-2-33 (stating that making arrests is an official duty of a Georgia State Patrol officer); *cf. Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) ("Because making an arrest is within the official responsibilities of a sheriff's deputy, Terry was performing a discretionary function when he arrested Crosby.").

right; and (2) whether the right was 'clearly established' at the time of the defendant's misconduct."[2]  *Rehberg v. Paulk*, 598 F.3d 1268, 1277 (11th Cir. 2010).  "This two-pronged analysis may be done in whatever order is deemed most appropriate for the case."  *Id.* (citing *Pearson v. Callahan*, 129 S. Ct. 808, 821 (2009)).  Finally, "this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Oliver*, 586 F.3d at 905 (internal quotation marks omitted).

    A.   Plaintiff's Fourth Amendment Claim

        1.  *Constitutional Violation*

"[A] claim of 'excessive force in the course of making [a] . . . 'seizure' of [the] person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.'"[3] *Scott v. Harris*, 550 U.S. 372, 381 (2007) (last five alterations in

---

[2]"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

[3]To the extent Plaintiff alleges a due process claim for the use of excessive force, his claim is dismissed. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.  Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

original) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). Thus, "'[t]he question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer.'" *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (per curiam) (alteration in original) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)). "Use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1244 (11th Cir. 2003) (per curiam) (internal quotation marks omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. *Graham*, 490 U.S. at 396 (internal quotation marks omitted).

"'Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Crenshaw*, 556 F.3d at 1290 (quoting *Graham*, 490 U.S. at 396). "This analysis 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396). However, regardless of the severity of the alleged offense, every officer may use some force in carrying out a custodial arrest. *See Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003); *see also Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Indeed, "the typical arrest involves some force and injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). Therefore, "[i]t is well established in [the Eleventh Circuit] that where an arrest is supported by probable cause, the application of de minimis force as needed to effect the arrest, without more, will not support a claim for excessive force in violation of the Fourth Amendment."[4] *Williams v. Sirmons*, 307 F. App'x 354, 360 (11th Cir. 2009) (per curiam); *accord Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

Here, Plaintiff contends that Defendant violated his right to be free from unreasonable seizure when he used excessive force during his arrest. (Compl. ¶¶ 39-40.) Specifically, Plaintiff alleges Defendant "forcefully grabbed Plaintiff's arms, yanked them behind his back, and slapped handcuffs on him," refused to loosen and double

---

[4]Plaintiff abandoned any argument that his arrest was not supported by probable cause. (Pl.'s Br. in Resp. to Def.'s Mot. to Dismiss 9 [hereinafter Pl.'s Resp.].)

lock the handcuffs, and dragged Plaintiff by the back of his shirt across the back seat of Defendant's cruiser, causing the handcuffs to click tighter and tighter, cutting into Plaintiff's wrists and causing visible injury. (*Id.* ¶¶ 12, 23-26.)

"Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodriguez*, 280 F.3d at 1352 (collecting cases). Plaintiff has failed to allege any facts indicating he sustained anything beyond a minimal injury as a result of the handcuffing. Therefore, the Court finds that Plaintiff has not alleged sufficiently severe conduct to rise to the level of excessive force as contemplated by the protection of the Fourth Amendment.

### 2. "Clearly Established"

Even assuming *arguendo* that Plaintiff adequately alleged a violation of his Fourth Amendment rights, Defendant is nevertheless entitled to qualified immunity because Plaintiff's right to be free from the force Defendant used was not clearly established at the time of his arrest. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) ("If a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine whether the right was clearly established." (internal quotation marks omitted)).

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable

11

> official would understand that what he is doing violates
> that right. This is not to say that an official action is
> protected by qualified immunity unless the very action in
> question has previously been held unlawful, but it is to
> say that in the light of pre-existing law the unlawfulness
> must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations and quotation marks omitted). Therefore, "when applied in excessive force cases, qualified immunity applies unless application of the standard would inevitably lead every reasonable officer [in the position of the defendant officer] to conclude the force was unlawful." *Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 910 (11th Cir. 2006) (per curiam) (alteration in original) (internal quotation marks omitted).

Plaintiff contends that the Eleventh Circuit "consistently ha[s] allowed an excessive force claim to go forward where an arrestee was handcuffed, posed no risk of danger to the officer, and was not resisting arrest." *Sanchez v. Hialeah Police Dep't*, 357 F. App'x 229, 232 (11th Cir. 2009) (per curiam). That line of cases, however, involves more than *de minimis* uses of force.[5] *See Oliver*, 586 F.3d at 902-08 (repeated taser shocks resulting in death); *Galvez v.*

---

[5]The Court also notes that four of the five cases the Eleventh Circuit cited in *Sanchez* for the proposition that it "consistently ha[s] allowed an excessive force claim to go forward where an arrestee was handcuffed, posed no risk of danger to the officer, and was not resisting arrest" were decided in 2008 or 2009. Those cases, therefore, could not have clearly established the unlawfulness of Defendant's conduct as of November 18, 2007.

*Bruce*, 552 F.3d 1238, 1243-45 (11th Cir. 2008) (repeatedly slamming handcuffed arrestee into corner of a concrete wall with sufficient force to break arrestee's ribs and cause a leaking aneurysm); *Reese v. Herbert*, 527 F.3d 1253, 1272-74 (11th Cir. 2008) (in the absence of probable cause, beating, kicking, twisting arm, applying pressure point technique to neck, and spraying with pepper spray); *Hadley v. Gutierrez*, 526 F.3d 1324, 1329-30 (11th Cir. 2008) (punching in stomach); *Lee*, 284 F.3d at 1198-1200 (slamming arrestee's head into trunk of car). Here, Plaintiff's allegations of Defendant's "excessive force" more closely resemble instances that the Eleventh Circuit has classified as *de minimis*. *See Nolin*, 207 F.3d at 1258 n.4 (grabbing arrestee from behind, shoving him a few feet against a vehicle, kneeing him in the back, and pushing his head into the side of the vehicle, which resulted in minor bruising but did not require medical attention); *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1458, 1460-61 (11th Cir. 1997) (per curiam) (slamming suspect against wall and kicking his legs apart without provocation); *Gold v. City of Miami*, 121 F.3d 1442, 1446-47 (11th Cir. 1997) (per curiam) (applying handcuffs too tightly for twenty minutes, resulting in skin abrasions); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556, 1559-60 (11th Cir. 1993) (pushing handcuffed arrestee up against wall because arrestee spoke after being told to "shut up"). The Court finds that under the Eleventh Circuit's excessive force standard, an

officer in Defendant's position would not conclude that the force he applied was unlawful. Accordingly, Defendant is entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

B. Plaintiff's Fourteenth Amendment Claim

1. Constitutional Violation

Plaintiff alleges Defendant's deliberate indifference to his serious medical needs violated his Fourteenth Amendment right to receive timely medical treatment. (Compl. ¶ 40.)[6] "An officer violates a detainee's 'Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of

---

[6]The Court notes that Plaintiff couches his failure to provide medical care claim as a deliberate indifference claim in violation of the Fourteenth Amendment. Therefore, the Court analyzes it as such. The Court, however, does observe that it is not clear whether a failure by an arresting officer to provide necessary medical care should be analyzed instead as a Fourth Amendment claim using an objective reasonableness standard. "The precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins," accompanied by Fourteenth Amendment protections, is not settled in this Circuit. *Hicks v. Moore,* 422 F.3d 1246, 1253 n.7 (11th Cir. 2005); *accord Garrett v. Athens-Clarke County, Ga.,* 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) (per curiam). Other circuits have concluded that Fourteenth Amendment analysis does not begin until after the plaintiff has been released from the arresting officer's custody. *E.g., Gutierrez v. City of San Antonio,* 139 F.3d 441, 452 (5th Cir. 1998). Even if Plaintiff's claim should be analyzed under the Fourth Amendment instead of the Fourteenth, Defendant would be entitled to qualified immunity because the law in the Eleventh Circuit is not clearly established as to whether failure to provide medical care by an arresting officer under the circumstances here constitutes a violation of the Fourth Amendment.

the detainee.'"[7] *Crosby v. Monroe County*, 394 F.3d 1328, 1335 (11th

Cir. 2004) (quoting *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419,

1425 (11th Cir. 1997)). "In order to make out a case of deliberate

indifference, a prisoner [or detainee] must establish that his

medical treatment was 'so grossly incompetent, inadequate, or

excessive as to shock the conscience or to be intolerable to

fundamental fairness.'" *Brannon v. Thomas County Jail*, 280 F. App'x

930, 933 (11th Cir. 2008) (per curiam) (quoting *Harris v. Thigpen*,

941 F.2d 1495, 1505 (11th Cir. 1991)). Specifically, Plaintiff must

sufficiently allege "both an objectively serious medical need and

that a Defendant acted with deliberate indifference to that need."

*Harper*, 592 F.3d at 1234 (internal quotation marks omitted).

Plaintiff must also show a causal connection between that

indifference and Plaintiff's injury. *Id*.

The Eleventh Circuit has articulated the following standard for

determining whether a medical need is serious:

> A serious medical need is one that has been diagnosed by a
> physician as mandating treatment or one that is so obvious
> that even a lay person would easily recognize the necessity
> for a doctor's attention. In the alternative, a serious
> medical need is determined by whether a delay in treating

---

[7]The Eleventh Circuit has held that "the minimum standard for
providing medical care to a pre-trial detainee under the Fourteenth
Amendment is the same as the minimum standard required by the Eighth
Amendment for a convicted prisoner." *Lancaster v. Monroe County, Ala.*, 116
F.3d 1419, 1425 n.6 (11th Cir. 1997). Thus, Eighth and Fourteenth
Amendment cases provide guidance in the "deliberate indifference" analysis.
*Id*.

> the need worsens the condition. In either case, the
> medical need must be one that, if left unattended, poses a
> substantial risk of serious harm.

*Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009)

(citations and internal quotation marks omitted). Although Plaintiff

does not pinpoint the nature of his serious medical need in his

Complaint, he does allege that he suffers from occupational asthma,

and he appears to allege that on this occasion his uncontrollable

coughing presented a serious medical need.[8] (Compl. ¶¶ 31, 33, 55.)

Although asthma certainly can qualify as a serious medical condition,

*Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995), the diagnosis of

asthma alone is not enough to establish a serious medical need.[9]

---

[8]To the extent Plaintiff claims Defendant was deliberately indifferent
to Plaintiff's serious medical needs when Defendant "ignored Plaintiff's
cries for help in loosening the handcuffs that were cutting into
Plaintiff's wrists" (Compl. ¶ 53), Plaintiff's claim is dismissed, *see*
*Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (stating prisoner's
swollen, bleeding wrists from handcuffs that were too tight "do not
constitute such a 'serious medical need' that any minor delay caused by the
defendants in delivering [the prisoner] to the care of medical personnel
could be construed as 'deliberate indifference'").

[9]In *Adams*, a prisoner who suffered from chronic asthma exhibited
wheezing, coughing, shortness of breath, and labored breathing just prior
to his death from acute respiratory failure. 61 F.3d at 1539-41. Although
the severity of the prisoner's medical needs was undisputed based on those
facts, nothing in *Adams* suggests that every episode of asthma symptoms
constitutes a serious medical need. It is common knowledge that some
asthma "attacks" are mild and brief in duration, while others are severe,
prolonged, and even life threatening. Courts recognize this distinction
and refuse to fashion a rule that every instance of failure to treat a
prisoner or detainee's asthma rises to the level of a constitutional claim.
*Williams v. Rodriguez*, 509 F.3d 392, 401-02 (7th Cir. 2007) (arrestee's
asthma was not objectively severe enough to constitute a serious medical
need). Most courts that have addressed the issue have required a showing
that the asthma attack was severe or that it led to physical harm. *Compare*

Instead, courts must look to the seriousness of the condition at the time of the events alleged in the complaint. *Williams v. Rodriguez*, 509 F.3d 392, 401-02 (7th Cir. 2007) (while arrestee suffered from chronic asthma that had required trips to the emergency room in the past, at the time of his traffic stop his asthma was not objectively serious, as he was not "exhibiting physical symptoms reflective of an asthma attack" and there was no evidence that he was unable to control his breathing without immediate medical assistance); *see Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005) ("[A]sthma can be, and frequently is, a serious medical condition, *depending on the severity of the attacks*." (emphasis added)); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("Asthma, depending upon its degree,

---

*Williams*, 509 F.3d at 402 (no evidence arrestee was suffering from a severe asthma attack sufficient to state a constitutional claim), *King v. Kilgore*, 98 F.3d 1338 (5th Cir. 1996) (per curiam) (unpublished table decision) (prisoner failed to allege facts showing that he experienced substantial harm resulting from delay in treating his asthma), *Thomas v. Mikell*, Civil Action No. 608-012, 2008 WL 2156362, at *2 (S.D. Ga. May 22, 2008) (prisoner who alleges that he was suffering "chest pains" of unspecified severity and that he "went to bed sick" does not allege type of severe asthma attack that courts have recognized as requiring immediate medical attention), *and Reeves v. Wallington*, No. 06-10326, 2007 WL 3037705, at *4 (E.D. Mich. Oct. 17, 2007) (prisoner's claim of breathing difficulties due to asthma did not meet the objective component of the deliberate indifference test, as he had not shown his asthma constituted a serious medical condition), *with Johnson v. Farrey*, No. 03-C-592-C, 2003 WL 23111966, at *3 (W.D. Wis. Nov. 14, 2003) (prisoner's allegation that guards observed him having severe asthma attack and refused to furnish his asthma inhaler, thus requiring his hospitalization, satisfied the objective component of an Eighth Amendment claim), *and Harrison v. Sample*, No. C 07-959 SI (pr), 2007 WL 1319525, at *1 (N.D. Cal. May 4, 2007) (allegation that prisoner "blacked out and lost consciousness" as a result of guard's refusal to provide asthma inhaler stated an Eighth Amendment claim).

can be a serious medical condition."). Here, Plaintiff alleges that he notified Defendant of his asthmatic condition and exhibited a classic physical symptom of an asthma attack, uncontrollable coughing, of sufficient severity to cause a neck injury. *See Danley*, 540 F.3d at 1311 (citing 1 J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine and Word Finder* A-572 (Matthew Bender & Co., Inc. 2007) as defining "asthma" as "[a] condition characterized by recurring attacks of dypsnea (shortness of breath), a feeling of pressure on the chest, wheezing, cough, fear, etc." (alteration in original) (internal quotation marks omitted)). Reading Plaintiff's Complaint in the light most favorable to him, the Court finds that Plaintiff has alleged an objectively serious medical need.

Plaintiff has not, however, alleged sufficient facts supporting his legal conclusion that Defendant acted with deliberate indifference to his serious medical need. To establish deliberate indifference, Plaintiff must demonstrate that Defendant: "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Harper*, 592 F.3d at 1234. To determine what constitutes "more than gross negligence" in cases that turn on the delay in providing medical care, courts consider: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th

18

Cir. 2007). Even reading Plaintiff's Complaint in the light most favorable to him, Plaintiff has not alleged facts supporting his conclusion that Defendant acted with more than gross negligence.

Plaintiff alleges that after Officer Borum left the scene, he began to "cough uncontrollably and screamed for his inhaler[.]" (Compl. ¶¶ 30-31.) "Defendant ignored Plaintiff's pleas and, instead, began the process of having Plaintiff's vehicle removed from the scene." (*Id.* ¶ 32.) "At that time, and as a direct and proximate cause of Defendant's deliberate indifference to Plaintiff's medical needs, the coughing fit became uncontrollably violent, causing injury to his L6-L7 vertebrae." (*Id.* ¶ 33; *see id.* ¶ 55 (stating that Defendant "delayed in responding to Plaintiff's serious medical needs when Defendant failed to call EMS until the coughing fit had gotten so out of control so as to cause injury to Plaintiff's neck").) "Only at that time did Defendant decide to call EMS." (*Id.* ¶ 34.)

Plaintiff at no point, however, alleges how long he was coughing "uncontrollably" before Defendant called EMS. Given that Plaintiff's allegations of deliberate indifference are based on Defendant's *delay* in providing medical treatment, Plaintiff's failure to plead facts establishing the duration of that delay requires the Court to speculate as to the length of the delay. Thus, the Court is unable to determine that Plaintiff's claims "raise a right to relief above

the speculative level."[10]  *Twombly*, 550 U.S. at 555; *cf. Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000) (noting that delay in treatment analysis developed in contexts involving much longer time frames inapplicable to a "split-second, emergency choice").  What is apparent from Plaintiff's factual allegations is that Defendant's delay in seeking medical assistance for Plaintiff was not prolonged. To the contrary, Plaintiff's allegations indicate that mere moments elapsed between the start of Plaintiff's coughing and Defendant's call to EMS.  (Compl. ¶¶ 31-35 (stating that "shortly []after" Officer Borum left the scene, Plaintiff "began to cough uncontrollably," that Defendant ignored Plaintiff, that "[a]t that time" "the coughing fit became uncontrollably violent, causing injury" and that "at that time" Defendant called EMS).)  Plaintiff's allegations further reveal that Defendant did not believe Plaintiff's coughing posed a serious risk to his health (*id.* ¶ 36 (stating Defendant told EMS that "Plaintiff was faking the whole thing")), and

---

[10]To the extent Plaintiff contends Defendant should have provided him his inhaler instead of calling EMS, Plaintiff's contention is without merit.  *See Case v. Riley*, 270 F. App'x 908, 911 (11th Cir. 2008) (per curiam) ("That [the plaintiff] may have desired more or a different course of treatment does not amount to a constitutional violation."); *Adams*, 61 F.3d at 1545 (whether defendants "should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding" constitutional liability (internal quotation marks omitted)); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that when a plaintiff receives adequate medical care, but desires different modes of treatment, the care provided does not amount to deliberate indifference).

that Defendant delayed providing medical assistance so that he could "beg[i]n the process of having Plaintiff's vehicle removed from the scene" (*id.* ¶ 32). To the extent Defendant's conduct delayed Plaintiff's receipt of medical attention by a few moments, the short delay was not unreasonable under the circumstances, including the need to complete Plaintiff's arrest.[11] *See Andujar v. Rodriguez*, 486 F.3d 1199, 1204 (11th Cir. 2007) (finding delay of two hours or less in receiving stitches tolerable to give police opportunity to book plaintiff where plaintiff was stabilized and condition was not urgent); *see also Adams*, 61 F.3d at 1544 ("Some delay in rendering medical treatment may be tolerable depending on the nature of the medical need and the reason for the delay."); *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994) ("The tolerable length

---

[11]The Court recognizes that "deliberate indifference" can include "'the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified.'" *Harper*, 592 F.3d at 1235 (quoting *Taylor*, 221 F.3d at 1259-60). That principle was, however, "developed in contexts involving much longer time frames than the incident at issue here, and with those longer time frames, greater periods for reflection upon a course of action." *Taylor*, 221 F.3d at 1260; *see Lancaster*, 116 F.3d at 1420-23 (detailing sequence of failures that, over the course of a long night of incarceration, led to detainee's death); *Hill v. Dekalb County Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 n.21 (11th Cir. 1994) (collecting and describing cases), *overruled on other grounds by Hope*, 536 U.S. at 739 n.9. "Determining where to draw the line between the constitutional and the unconstitutional in a split-second, emergency choice between two options of the sort made here is a distinct task." *Taylor*, 221 F.3d at 1260. Defendant's denial of Plaintiff's request for his inhaler and decision, instead, to call EMS moments later, was not, in the brief time frame alleged, "'an unnecessary and wanton infliction'" of physical suffering. *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).

of delay in providing medical attention depends on the nature of the medical need and the reason for the delay."); *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994) ("Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation."), *overruled on other grounds by Hope*, 536 U.S. at 739 n.9. Defendant's conduct here, at worst, amounted to ordinary negligence, which is not sufficient to give rise to a constitutional violation. *See Adams*, 61 F.3d at 1543 ("'[I]t is obduracy and wantonness, not inadvertence or error in good faith,' that violates the Eighth Amendment in 'supplying medical needs.'" (alteration in original) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986))).

2. *"Clearly Established"*

Alternatively, even if the Court assumes that Plaintiff has stated a constitutional violation by alleging that Defendant ignored his request for his inhaler, Defendant is still entitled to qualified immunity because Plaintiff's right to his inhaler upon

request under the circumstances faced by Defendant was not clearly established.

As explained above, the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad proposition." *Oliver*, 586 F.3d at 907 (internal quotation marks omitted). Plaintiff has not cited, and the Court has not found, a case holding that the Constitution requires a law enforcement officer, when confronted with a detainee who is "cough[ing] uncontrollably" for an unspecified duration, to provide the detainee his asthma inhaler upon request, rather than call EMS moments later. *See id.* ("In order to determine whether a right is clearly established, we look to the precedent of the Supreme Court of the United States, this Court's precedent, and the pertinent state's supreme court precedent, interpreting and applying the law in similar circumstances.").[12] In fact, at least one analogous Eleventh Circuit case held just the opposite. *Hathcock v. Armor Corr. Health Servs., Inc.*, 186 F. App'x 962, 963-64 (11th Cir. 2006) (per curiam) (affirming district court's holding that Plaintiff's allegations that prison nurse denied plaintiff asthma medication amounted, at most, to

---

[12]Likewise, this is not a case of "'obvious clarity'–i.e., where the officer's conduct 'lies so obviously at the very core of what the Four[eenth] Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the official], notwithstanding the lack of fact-specific case law' on point." *Oliver*, 586 F.3d at 907 (second alteration in original) (quoting *Vinyard*, 311 F.3d at 1355).

23

negligence or medical malpractice, which is insufficient to state a constitutional claim).

Moreover, while there was case law establishing the general legal proposition that a government official who intentionally delays providing medical care to a detainee, knowing that the detainee has a serious medical condition that could be exacerbated by delay, acts with deliberate indifference, *see, e.g., Lancaster*, 116 F.3d at 1425, the Court "cannot say that this general rule applied with obvious clarity to the specific conduct in question,"[13] *Andujar*, 486 F.3d at 1205 (internal quotation marks omitted); *see Bozeman v. Orum*, 422 F.3d 1265, 1274 (11th Cir. 2005) (per curiam) (noting that because "cases are highly fact-specific," this general legal proposition "ordinarily does not preclude qualified immunity in cases involving a delay in medical treatment for a serious injury"); *see also Goebert*, 510 F.3d at 1330 ("The more general the statement of law is that puts the official on notice, the more egregious the violation must be before we will find that the official is not entitled to qualified immunity."); *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc) (ruling that a law is clearly established only

---

[13]As explained *supra*, this general principle was developed in contexts involving much longer time frames than the incident at issue here, and with those longer time frames, greater periods for reflection upon a course of action. *Taylor*, 221 F.3d at 1260. Determining where to draw the line between the constitutional and the unconstitutional in the more abbreviated time frame at issue here is a distinct and more difficult task.

if it "dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances" (internal quotation marks and citation omitted)). Defendant's conduct during the arrest did not violate a clearly established constitutional right, and therefore, he is entitled to qualified immunity.

## II. Plaintiff's State Law Tort Claims

In Counts Two and Three of his Complaint, Plaintiff seeks to hold Defendant liable under Georgia law for assault, battery, and intentional infliction of emotional distress. (Compl. ¶¶ 43-51.) Defendant is entitled to official immunity for Plaintiff's state law tort claims.

The Georgia Tort Claims Act ("GTCA") plainly provides Defendant immunity from Plaintiff's state law claims: "This article constitutes the exclusive remedy for any tort committed by a state officer or employee. A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a); *see also* O.C.G.A. § 50-21-21(b) ("[I]t is declared to be the public policy of this state that state officers and employees shall not be subject to lawsuit or liability arising from the performance or nonperformance of their official duties or

25

functions."). Moreover, in a suit brought pursuant to the GTCA, the plaintiff "must name as a party defendant *only* the state government entity for which the state officer or employee was acting and *shall not name the state officer or employee individually*." O.C.G.A. § 50-21-25(b) (emphasis added).

Plaintiff admits in his Complaint that "Defendant J.D. Perry was at all times relevant to this Complaint a duly appointed *and acting* officer of the Georgia State Patrol[.]" (Compl. ¶ 4 (emphasis added).) Plaintiff contends, however, that "Defendant's actions were based upon his personal dislike for City police officers" (Pl.'s Resp. 8; *see also* Compl. ¶ 56), and that "[t]aking out a personal vendetta on citizens on the street can hardly be described as 'within the scope of his or her official duties or employment'" (Pl.'s Resp. 8 (quoting O.C.G.A. § 50-21-25(a))). Plaintiff's argument is without merit. *See Tootle v. Cartee*, 280 Ga. App. 428, 430-31, 634 S.E.2d 90, 92-93 (2006) (granting immunity since employee's unauthorized defamatory statements did not take employee outside scope of employment); *Davis v. Standifer*, 275 Ga. App. 769, 771-73, 621 S.E.2d 852, 855-56 (2005) (finding Georgia State Patrol officer entitled to official immunity from plaintiff's allegations he sexually assaulted her during a traffic stop); *Mattox v. Bailey*, 221 Ga. App. 546, 546, 472 S.E.2d 130, 131 (1996) (granting Georgia Department of Corrections officer immunity from claim that he battered an inmate by

26

slamming his head into a door and beating him while escorting him across prison grounds).  To the contrary, "the GTCA's exemption of state officers and employees from liability for torts committed while acting within the scope of their official duties or employment has been construed broadly to include unauthorized tortious acts that occur during the time the officer or employee is engaged in performance of his official duties." *Tootle*, 280 Ga. App. at 430-31, 634 S.E.2d at 93 (internal quotation marks omitted); *see also Davis*, 275 Ga. App. at 771, 621 S.E.2d at 855 ("Where the state employee acts in the prosecution and within the scope of [his official duties], intentional wrongful conduct comes within and remains within the scope of employment." (alteration in original) (internal quotation marks omitted)).  "'[B]oth the provisions of the GTCA and the case law interpreting it demonstrate that the Act provides immunity from liability for torts committed during a state employee's performance of official duties without regard to intent or malice.'" *Ford v. Caffrey*, 293 Ga. App. 269, 273, 666 S.E.2d 623, 626 (2008) (quoting *Hardin v. Phillips*, 249 Ga. App. 541, 544, 547 S.E.2d 565, 568 (2001)).

Here, Plaintiff's state law tort allegations arose exclusively from Defendant's arrest of Plaintiff.  Making an arrest is within the official responsibilities of a Georgia State Patrol officer.  *See* O.C.G.A. §§ 35-2-32(b), 35-2-33.  Thus, Plaintiff may not maintain

Counts Two and Three against Defendant in his individual capacity because those allegations "arose from the performance of [Defendant's] official duties as a [Georgia State Patrol] officer." *Mattox*, 221 Ga. App. at 546, 472 S.E.2d at 131. Accordingly, Plaintiff's state law tort claims against Defendant are dismissed.

## III. Plaintiff's Motion for Leave to Amend

In his response to Defendant's motion to dismiss, Plaintiff seeks leave of the Court "in order to file an amended complaint as opposed to outright dismissal should this Court find the complaint legally insufficient in some way." (Pl.'s Resp. 9.) "[T]rial courts have broad discretion in permitting or refusing to grant leave to amend." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006). Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading[.]" Fed. R. Civ. P. 15(a)(1)(B). After that time has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A "court should freely give leave when justice so requires." *Id.* However, a court may deny leave to amend "where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam); *accord Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006) (per curiam). The Eleventh Circuit has

28

found that "'denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.'" *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)); *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008) (explaining that futility is a basis for denying leave to amend under Federal Rule of Civil Procedure 15(a)(2)).

In determining whether a motion to amend is futile, the Court examines whether the proposed amended complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). In this case, Plaintiff has not submitted a proposed amended complaint for the Court to review for futility purposes; nor does he suggest how he would amend his present Complaint. Instead, he seeks to have the Court rewrite his Complaint for him and cure any pleading deficiencies found by the Court. Plaintiff's deficiencies cannot be cured by amendment. He has alleged the relevant facts, but they simply do not overcome Defendant's entitlement to qualified immunity and official immunity; nor do they satisfy Plaintiff's obligation to state a claim upon which relief may be granted. The facts, as alleged, make it clear that allowing Plaintiff leave to amend the Complaint would be a futile exercise. Accordingly, Plaintiff's motion to amend his Complaint is denied.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 4) is granted. Plaintiff's request for leave to file an amended complaint is denied.


IT IS SO ORDERED, this 14th day of June, 2010.


                                    S/Clay D. Land
                                    CLAY D. LAND
                            UNITED STATES DISTRICT JUDGE